UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


CHRISTA EUGENIA C.,[1]

      **Plaintiff,**

    **v.**
                        **Civil Action 3:25-cv-150**
                            **Judge Michael J. Newman**

**COMMISSIONER OF SOCIAL**
                            **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, Christa Eugenia C. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the Court for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.      BACKGROUND

Plaintiff protectively filed her DIB application in January 2023, alleging that she became disabled August 5, 2021. After Plaintiff's application was denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held a telephonic hearing on January

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

25, 2024. Plaintiff, who was represented by counsel, and a vocational expert ("VE") both appeared and testified at that hearing. On April 3, 2024, the ALJ issued an unfavorable determination which became final on March 18, 2025, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. She contends that the ALJ reversibly erred when doing a subjective symptom assessment (*f.k.a.*, making a credibility determination). (Pl.'s Statement of Errors 9–15, ECF No. 10.)[2] Defendant correctly contends that Plaintiff's contention of error lacks merit. (Def.'s Mem. in Opp'n, 4–11, ECF No. 12.)

## II.     THE ALJ'S DECISION

On April 3, 2024, the ALJ issued the decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 82–100.) The ALJ initially determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2025.

---

[2] Plaintiff also suggests that the ALJ erred by failing to find that her myofascial pain syndrome was a severe impairment. (Pl.'s Statement of Errors 13, ECF No. 10.) But she fails to develop this argument and has thus forfeited it. *See McPherson v. Kelsey*, 125 F.3d 989, 996–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted)); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006) ("This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").

(*Id*. at 87.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged disability onset date of August 5, 2021. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; lumbar radiculitis; migraine headaches; and right eye blindness. (*Id*. at 88.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 88.) Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[4] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes or scaffolds; occasionally climb ramps and stairs and balance, stoop, kneel, crouch and crawl; no use of moving machinery or work at unprotected heights; needs the option to alternate

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[4] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

3

> between sitting and standing in 20 minute intervals; no more than frequent near and far acuity and depth perception; exposure to no more than indoor, ambient lighting

(*Id*. at 90.)

At step four, the ALJ relied on testimony from the VE to determine that Plaintiff would not be able to perform her past relevant work. (*Id*. at 93.) Relying on the VE's testimony again at step five, the ALJ determined that given her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of assembler, marker, and collator operator. (*Id.* at 93–94.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 94–95.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y*

*Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained, Plaintiff contends that the ALJ reversibly erred when assessing her subjective symptoms. The undersigned is not persuaded.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929(c)(1); *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources,

including medical opinions. *Id.* In addition, SSR 16–3p[5] sets forth factors that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all these factors the ALJ should show that he or she considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

An ALJ will also consider whether a plaintiff sought medical treatment and followed prescribed care. SSR 16-3p, 2017 WL 5180304, at *9. Attempts to obtain or follow prescribed treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts

---

[5] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at * 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

may show that an individual's symptoms are not intense or persistent. *Id.* at *9–10. But an ALJ may draw an adverse inference from a plaintiff's failure to seek or follow treatment only if he or she both considers and explains the plaintiff's possible reasons for that failure. *Id*. at *10; *Dooley,* 656 F. App'x at 119 (noting that an ALJ must consider the claimant's reasons before inferring that a lack of treatment undermines the claim).

An ALJ need only discuss those factors that are pertinent based upon the evidence in the record. SSR 16–3p, 2017 WL 5180304 at *7–8. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

Here, the undersigned finds no reversible error in the ALJ's subjective symptom assessment. The ALJ accurately set forth the two-part test described above. (R. at 90–91.) The ALJ then explained that she applied that test and determined that Plaintiff's subjective symptoms were not entirely consistent with the record evidence, writing as follows: "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent." (*Id*. at 91.) The ALJ then explained why Plaintiff's statements about the disabling nature of her symptoms were inconsistent with the record evidence.

The ALJ began that explanation by summarizing Plaintiff's subjective symptoms. She wrote the following:

> The claimant had complaints of back pain. An MRI of the claimant's cervical spine from December 2020 showed moderate degenerative disc changes, moderate central canal stenosis and cord compression, moderate to marked right and moderate left foraminal narrowing (2F/52-53). Similarly, an MRI of the claimant's

> lumbar spine showed mild to moderate degenerative disc and spondylotic changes w/mild degrees of neural encroachment (2F/56), (*sic*)

> The claimant reported that she was having severe headaches two times per month with daily mild headaches. In June 2021, she reported they were becoming less frequent. Physical examination was within normal limits during this visit (6F/7).

(*Id*.) The ALJ then discussed record evidence including physical examination results, imaging studies, Plaintiff's treatment history, and Plaintiff's use of migraine medications. (*Id*. at 91–92.)

After that detailed discussion, the ALJ reiterated that Plaintiff's allegations of disabling symptoms were inconsistent with the record evidence, writing as follows:

> In sum, the above residual functional capacity assessment is supported by physical examinations, radio graphic imaging, the opinion evaluation and other factors as discussed above. These findings, coupled with the claimant's improvement with consistent treatment, compliance with medications and her ability to care for herself are not consistent with her allegations of disabling limitations.

(*Id*. at 93.) As this explanation makes clear, the ALJ considered physical examinations, imaging, and medical opinions, and determined that all of them, coupled with Plaintiff's response to treatment, medication compliance, and ability to care for herself were inconsistent with Plaintiff's allegations.

This analysis was proper. An ALJ is required to consider objective medical evidence such as Plaintiff's physical examinations and imaging. *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023) (explaining that "[a]n ALJ must consider how closely a claimant's self-reported symptoms line up with objective medical evidence and other evidence in the record.") *See also*, SSR 16-3p, 2017 WL 5180304, at *5 (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

The ALJ's consideration of that objective evidence is also substantially supported by the record. First, the ALJ accurately explained that physical examinations were inconsistent with Plaintiff's allegations about the disabling nature of her symptoms. (R. at 93.) For instance, the ALJ noted normal results from a June 2021 examination. (*Id*. at 91.) And the June 2021 treatment note cited by the ALJ documents that Plaintiff was not in acute distress, dysarthric, ataxic, or sedated. (*Id*. at 91, 540.) Instead, she was alert and oriented, used clear language, and could follow commands. (*Id*. at 91, 540.) The ALJ also correctly explained that a February 2022 examiner found that Plaintiff's neck was not tender except in the lateral sides; she had normal range of motion in her neck; she had no tenderness in her spine or her paraspinous muscles; and she had good range of motion in all major joints. (*Id*. at 91, 424.) Likewise, the ALJ observed that during her January 2023 consultative examination, Plaintiff could only squat to about 50% with pain in her knees and back, and she had mild discomfort to palpitation of the paracervical and paralumbar regions. (*Id*. at 92, 516.) But Plaintiff nevertheless had full range of motion in her neck, back, and extremity joints, negative Spurling maneuver and straight leg raising tests, and she walked with a normal gait. (*Id*.) Similarly, at a back pain appointment in January 2024, although Plaintiff had tenderness in her cervical and lumbar spine with decreased ranges of motion and tenderness in her hips, she also had normal ranges of motion in her shoulders and hips, normal gait, negative straight leg raising tests, and no sensory deficits or motor weakness. (*Id*. at 91–92, 666.)

Second, the ALJ also correctly indicated that imaging evidence was inconsistent with the Plaintiff's disabling allegations. (R. at 93.) Substantial evidence supports that explanation too given the generally moderate results of imagining studies. A December 2020 MRI of Plaintiff's cervical spine showed moderate degenerative changes, moderate central canal stenosis and cord

9

compression, and moderate-to-marked right and moderate left foraminal narrowing. (*Id*. at 93, 445.) A contemporaneous MRI of Plaintiff's lumbar spine showed mild-to-moderate degenerative disc and spondylotic changes with mild degrees of neural encroachment at L2-3 and L3-4. (*Id*. at 93, 448.) A CT of Plaintiff's head in February 2022 was also normal, as was an X-ray of her spine done at that time. (*Id*. at 93, 425, 432.)

The ALJ also considered opinion evidence and prior administrative findings when assessing Plaintiff's subjective symptoms. That too was proper. SSR 16-3p, 2017 WL 5180304, at *6–7 (explaining that an ALJ "will consider . . . findings [from state agency medical and psychological consultants and other program physicians and psychologists] in evaluating the intensity, persistence, and limiting effects of the individual's symptoms"). The state agency reviewing physicians at both the initial and reconsideration levels found that Plaintiff could perform light work with some limitations—an assessment the ALJ found persuasive. (R. at 70–71, 78–79, 92–93.)[6]

The ALJ also properly considered Plaintiff's treatment compliance and her ability to care for herself. SSR 16-3p, 2017 WL 5180304, at *7, 8, 9. The ALJ correctly noted that despite "complaints of back pain, [Plaintiff] stopped treatment for years." (*Id*. at 92, 666.) The ALJ also correctly noted that Plaintiff reported to the consultative examiner that she was able to perform personal grooming. (*Id*. at 91, 515.)

Yet Plaintiff contends that the ALJ erred because it is "not clear why Plaintiff's subjective reports were discounted as the ALJ simply outlined some medical visits and the opinion evidence with absent to minimal discussion of Plaintiff's subjective complaints." (Pl.'s Statement of Errors 11, ECF No. 10.) But the ALJ acknowledged that Plaintiff complained of

---

[6] Plaintiff does not challenge the ALJ's evaluation of the state agency reviewers' findings.

back pain and migraines and then discussed record evidence about Plaintiff's cervical and lumbar spine and migraines that undermined those complaints. This was sufficient.

Plaintiff also contends that the ALJ erred by failing to consider that certain medications—amitriptyline and hydroxyzine—made her sleepy. And as previously explained, an ALJ cannot draw an adverse inference from a plaintiff's failure to seek or follow treatment unless the ALJ considers and explains possible reasons for that failure. SSR 16-3p, 2017 WL 5180304, at *10; *Dooley*, 656 F. App'x at 119. But the ALJ did not draw an adverse inference about Plaintiff's failure to use amitriptyline, which appears to have been prescribed for her depression, and which may have been discontinued because it was ineffective. (R. at 286, 452, 457, 467, 472, 477, 482, 487, 492, 497, 52.) Nor did the ALJ draw an adverse inference from Plaintiff's failure to take hydroxyzine for her migraines, which may have also been discontinued, at least for some period, due to its ineffectiveness. (*Id*. at 272, 286, 420.)

That said, the ALJ noted Plaintiff's improvement with consistent treatment (*id*. at 93), apparently in reference to evidence that she developed a migraine in 2022 after she stopped taking her migraine medication Imitrex (aka, sumatriptan) for about a month (*id*. at 91, 555). Plaintiff also indicated in at least one of several reports to the Social Security Administration that this medication made her sleepy. (*Id*. at 272, 263, 286.) But Plaintiff does not point to, and the undersigned has been unable to independently identify, evidence that Plaintiff reported this side effect to her care providers. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665 (6th Cir. 2004) (finding ALJ did not err by failing to consider medication side effects even though the plaintiff testified to the same; the record did not indicate that plaintiff ever reported side effects to her doctors); *Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) (finding no error where an ALJ rejected a plaintiff's testimony regarding medication side effects that

11

"were not documented in the record"); *Tricia G. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00412, 2023 WL 6170545, at *8 (S.D. Ohio Sept. 22, 2023) ("Because Plaintiff did not cite to any evidence that she complained to her providers about disabling side effects, the ALJ did not err by failing to find the claimed side effects to be disabling.").

In any event, even if the ALJ did err by failing to adequately consider Plaintiff's side effects from Imitrex, any error was harmless. As discussed, the ALJ also described Plaintiff's unremarkable physical examinations; the generally moderate results of imaging studies; the state agency reviewing physicians' findings; Plaintiff's failure to pursue treatment for her back pain; and Plaintiff's reported ability to groom herself. (*Id.* at 91–93.) In light of all these other substantially supported considerations, the undersigned concludes that the ALJ did not reversibly err when considering Plaintiff's subjective complaints. Consequently, the undersigned finds that Plaintiff's contention of error lacks merit.

## V.    RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept,

12

reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE